UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
TAHANI ADONIS,

                Plaintiff,        <u>OPINION</u>

      -against-             08 Civ. 1726 (MGC)


COURT OFFICER MELISSA COLEMAN
and COURT OFFICER CHRISTOPER
FERRARI

                Defendants.

----------------------------------X

APPEARANCES:

        ROBIN SMITH ATTORNEY AT LAW
        Attorney for Plaintiff
        25 Eighth Avenue
        Brooklyn, NY 11217
        By:  Robin C. Smith, Esq.

        LAW OFFICE OF RICHARD KORN
        Attorney for Plaintiff
        31 Smith Street
        Brooklyn, NY 11201
        By:  Richard Joel Korn, Esq.

        ANDREW M. CUOMO
        Attorney General of the State of New York
        Attorney for Defendants
        120 Broadway, 24th Floor
        New York, NY 10271
        By:  Roberta L. Martin, Esq.
            Monica Connell, Esq.


**Cedarbaum, J.**

    Tahani Adonis and her sister Diane visited the Civil Court

of the City of New York in Kings County on October 14, 2005.

While attempting to pass through security, Tahani got into a dispute with the court officers on duty and was arrested and issued a summons.  Following the issuance of the summons, Tahani was being escorted out of the courthouse by the officers when she got into a second dispute with them.  Tahani was arrested a second time, taken to the police precinct, and later taken to central booking where she was held for several hours, and then released.

Tahani sues court officers Melissa Coleman and Christopher Ferrari under 42 U.S.C. § 1983 and New York State law for false arrest and unlawful imprisonment. She also sues Melissa Coleman for malicious prosecution.  A two day bench trial was held on December 10 and 11, 2008.  Six witnesses testified:  Tahani Adonis, Diane Adonis, Thomas Merriweather, Melissa Coleman, Christopher Ferrari and Christopher Spatola.

## FINDINGS OF FACT

After examining all the evidence, observing the demeanor of the witnesses and considering the plausibility and credibility of the testimony, I make the following findings of fact.

The Civil Court of the City of New York, Kings County is located at 141 Livingston Street, Brooklyn, New York. The court is located in an office building, which also contains other businesses and offices. People entering 141 Livingston Street to

go to the Civil Court must pass through a security checkpoint at the entrance of the building.  On October 14, 2005, each person entering the building on the way to court was required to walk through a magnetometer and place all belongings on an adjacent X-ray machine to be scanned. Two court officers were on duty at each security checkpoint.  One officer operated the X-ray machine.  The other stood near the exit of the magnetometer and signaled to the next person in line when it was time to pass through the magnetometer.

On October 14, 2005, no camera phones were permitted in the Civil Court.  Any camera phones brought into the building had to be checked before the owner could proceed to the Civil Court. This policy was posted on a pillar adjacent to each magnetometer.  One of the officers stationed at the magnetometer would take possession of any camera phone, and escort the owner to a voucher desk where the phone would be handed to a second officer.  The second officer would fill out a triplicate form describing the phone to be vouchered, the owner's name and the date.  The owner would then sign the form and receive a copy of it to be used to retrieve the phone on the way out of the building.

October 14, 2005, was a rainy day.  On that day, Tahani Adonis accompanied her sister, Diane Adonis, to the Civil Court.

Diane came to court because she was filing an eviction complaint in Housing Court, one of the courts located in the Civil Court building.  When Tahani and Diane entered the building, only one magnetometer was in use, and there was a line of several people waiting to pass through security.

Defendants Melissa Coleman and Christopher Ferrari are court officers in the employ of the New York State court system. On October 14, 2005, they were stationed together at one of the magnetometers.  Officer Coleman was operating the hand scanner and Officer Ferrari was operating the X-ray machine.  When Tahani and Diane arrived at the security checkpoint, Diane went through first, followed by Tahani.  Officer Ferrari observed Diane's cell phone, took it into his possession, and informed her that she would have to wait in the line at the voucher desk.

When Tahani arrived at the security checkpoint, she took out her cell phone and placed it in a grey bucket, placed her pocketbook on the x-ray machine and walked through the magnetometer.  Officer Coleman saw Tahani's phone and picked it up.  She advised Tahani that camera phones were not allowed in the building and that she would have to check her phone.  Tahani responded by asking to have her phone back.  What happened next is a matter of dispute between the parties.

Tahani testified that upon being informed that she would need to voucher her phone, she asked Coleman to give her phone back to her. However, according to Tahani, Coleman did not respond to her request and instead just stared at her. Tahani repeated the request several times, but Coleman did not answer her. Tahani testified that Officer Ferrari came over from the X-Ray machine and told her that if she asked for her phone back one more time, she would be arrested. She asked again, and Ferrari arrested her.

I did not find the plaintiff to be a credible witness as to whether she caused a disturbance at the security checkpoint and do not credit her testimony about her arrest. Rather, I credit the testimony of officers Coleman and Ferrari, who each testified credibly that when Tahani was advised that she must voucher her phone, she began screaming, "Why do I have to do this?" Coleman told Tahani several times that she needed to voucher her camera phone or remove it from the building. However, Tahani became increasingly loud and began cursing. After a few exchanges between Coleman and Tahani, Ferrari came over and repeated Coleman's instructions. He told Tahani that she needed to either voucher the phone or take it and leave. He also advised her that if she did not stop screaming, she would be placed under arrest. She would not stop, and Ferrari arrested her.

Diane Adonis testified credibly that she had gone through security already and was standing nearby waiting for Tahani when a "commotion" took place. She overheard Tahani asking for her phone back and heard the officers raise their voices. She then saw Tahani being placed in handcuffs.

After being placed under arrest, Tahani was escorted upstairs to the court operations office by the officers. Officer Coleman consulted with her supervisor and completed a summons charging Tahani with violating New York Penal Law § 240.20(2) by making unreasonable noise. Tahani spoke with a lieutenant, who asked her to sign the summons, and informed her that she had to leave the courthouse. The lieutenant directed Officer Coleman to escort Tahani out of the building. Because Officer Ferrari's shift was over, another officer, Officer Spatola, assisted Coleman in escorting Tahani out.

When Coleman, Spatola and Tahani reached the courthouse lobby, Coleman and Spatola instructed Tahani to leave the building. However, not far from the elevator, Tahani stopped, turned around and asked the two officers for her coat and umbrella. Tahani's testimony conflicts with the testimony of Officers Coleman and Spatola regarding what happened next.

According to Tahani, Coleman responded to her request for her coat and umbrella by telling her to get out of the building immediately. Tahani then explained to the officers that it was

6

cold out and that she was sick and could not leave without her coat and umbrella.  However, Coleman and Spatola simply repeated that she must leave and that if she did not, she would be placed under arrest.  When Tahani responded again that she could not leave without her coat and umbrella, Spatola proceeded to place her under arrest and put handcuffs on her.  Again, I did not find Tahani to be a credible witness with regard to these events.

In contrast, Coleman testified credibly that she never saw a coat or umbrella when Tahani was passing through security. Rather, she only saw a pocketbook and a cell phone, which were returned to Tahani before she left the operations office. Coleman and Spatola also testified credibly that when Tahani asked for her coat and umbrella, Coleman responded that she did not have them and that Tahani needed to leave the building. In response, Tahani began screaming that she would not leave the building without her coat and umbrella.  Spatola repeatedly instructed her that she must leave and that the officers did not have her coat or umbrella.  According to the officers, Tahani's screaming caused a crowd to form around them, blocking the entrance to the elevators.  After telling Tahani several times that she must leave, the officers told her that if she did not leave, she would be arrested.  Spatola informed her that if she was arrested a second time they would not issue her a summons.

Rather, she would be arrested and booked. Tahani would not stop yelling and screaming, and Spatola placed her under arrest. On cross examination, Coleman admitted that she did not attempt to locate Tahani's possessions when Tahani asked for them. She also admitted that she did not ask Tahani to step aside to discuss where her possessions might be.

The plaintiff's testimony regarding her second arrest was not credible as to whether she caused a disturbance. I credit the officers' testimony that Tahani raised her voice and caused a disturbance in the elevator bank. I also credit their testimony that several members of the public stopped to observe the commotion. Finally, I credit Coleman's testimony that she never asked Tahani to step aside and never offered to try to locate her belongings.

After being handcuffed again, Tahani was taken back to the operations office. There, Coleman made the decision to process Tahani through central booking rather than issue her a second summons. Officers Coleman and Spatola escorted Tahani to the local police precinct. At the precinct, Tahani was placed in a cell, photographed and fingerprinted.

During this time at the precinct, Coleman filled out paperwork given to her by the desk sergeant on duty. Coleman completed an unusual occurrence report stating that Tahani was arrested (the second time) for trespassing under New York Penal

Law § 140.05, disorderly conduct under § 240.20(1) and obstruction of governmental business under § 195.05.  In addition, Coleman completed a property voucher, itemizing each piece of property in Tahani's possession.  Tahani and Coleman were at the police precinct for approximately three hours.

Next, Coleman escorted Tahani to central booking, located at the criminal court in Brooklyn.  There, Tahani was placed in a cell guarded by correction officers.  When Tahani was released and allowed to go home, she had been held for approximately seven or eight hours.

Thereafter, Tahani appeared in court twice to defend herself in connection with the charges filed by the district attorney.  The case was then dismissed.  Tahani appeared in court four times in connection with her summons for disorderly conduct.  The summons was adjourned in contemplation of dismissal.

## DISCUSSION

Tahani sues under 42 U.S.C. § 1983 for false arrest, false imprisonment and malicious prosecution.  Defendants argue that there was probable cause to arrest and prosecute Tahani and that they are protected by the doctrine of qualified immunity because a reasonable police officer would have believed that there was probable cause to arrest and prosecute her.

**I. Legal Standard for False Arrest and Unlawful Imprisonment**

Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused her to be "deprived of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.   42 U.S.C. § 1983.  Claims of false arrest, false imprisonment and malicious prosecution in violation of the Fourth Amendment have been recognized as deprivations of rights cognizable in a § 1983 action. Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997), cert. denied, 522 U.S. 1115, 118 S. Ct. 1051, 140 L. Ed. 2d 114 (1998).

For purposes of evaluating a § 1983 action based on claims of false arrest and false imprisonment, courts in this circuit look to the elements of a false arrest claim under state law. Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992).  "The elements of false arrest . . . under § 1983 are substantially the same as the elements under New York law." Id. (citations omitted).  In addition, under New York law, the torts of false arrest and false imprisonment are largely synonymous.  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) (citing Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 473 (1972)). "Every false arrest is itself a false imprisonment, with the imprisonment commencing at the time of the arrest." Blanchfield v. State, 104 Misc. 2d 21, 24 (N.Y. Ct. Cl. 1980).

Under New York law, the elements of a false arrest claim are (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).

As for the fourth element, i.e. whether the confinement was privileged, the Second Circuit has not addressed whether a § 1983 plaintiff has the burden of proving the absence of probable cause or whether the defendant has the burden of proving its existence. See Warheit v. City of New York, 271 Fed. Appx. 123, 125 (2d Cir. 2008); Davis v. Rodriguez, 364 F.3d 424, 434 n.8 (2d Cir. 2004). However, it is clear that the existence of probable cause to arrest is a complete defense to an action for false arrest.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been committed. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it. Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).  Those

11

facts "need not reach the level of evidence necessary to support a conviction . . . but [they] must constitute more than rumor, suspicion, or even a strong reason to suspect." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983).  An arrest is not unlawful as long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.  Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  Thus "a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest."  Id.

## II. Legal Standard for Malicious Prosecution

Under New York law, "the elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Colon v. City of New York, 60 N.Y.2d 78, 82 (1983). Liability for the tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983.  Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994).

The first element, initiation of a legal proceeding, refers to a legal prosecution.  An action for malicious prosecution

lies only when a judicial proceeding has been maliciously, and without probable cause, instituted against the plaintiff and has been terminated in her favor. <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 117 (2d Cir. 1995) (citing <u>Raschid v. News Syndicate Co.</u>, 267 N.Y.S. 221, 225 (1st Dep't 1933)). Indeed, "[t]he essence of malicious prosecution is the perversion of proper legal procedure." <u>Singer</u>, 63 F.3d at 117 (quoting <u>Broughton v. State of New York</u>, 37 N.Y.2d 451, 457 (1975), <u>cert. denied</u>, 423 U.S. 929 (1975)). A charge and an arrest do not amount to a prosecution. <u>Singer</u>, 63 F.3d at 117 (citing <u>Raschid</u>, 267 N.Y.S. at 225). Thus, the exercise of independent judgment by the public prosecutor and his active role in initiating a criminal prosecution may break the chain of causation and decrease the likelihood that a complaining witness will be considered to have "caused" or "procured" the prosecution. <u>White v. Frank</u>, 855 F.2d 956, 962 (2d Cir. 1988). However, the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false.  <u>Id</u>.

As to the third element, the Second Circuit has held that to support a charge of malicious prosecution, plaintiff must prove a lack of probable cause. <u>Pinsky v. Duncan</u>, 79 F.3d 306, 312 (2d Cir. 1996). Indeed, "[b]ecause accusers must be allowed

room for benign misjudgments, the New York Court of Appeals has held that the law places a heavy burden on malicious prosecution plaintiffs." Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004)(internal quotations omitted).  The existence of probable cause is also a complete defense to a claim of malicious prosecution in New York. Colon, 60 N.Y.2d at 82.  In the context of malicious prosecution, probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty.  Id.

The fourth element which plaintiff must prove is malice. Under New York law, malice does not have to be actual spite or hatred, but means only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03 (1978)).

## III. Qualified Immunity Defense

Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights. Anderson v.

14

Creighton, 483 U.S. 635, 638 (1987).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.  Id.

Qualified immunity is an affirmative defense. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)(citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).  Where the right at issue in the circumstances confronting the official--here, the right not to be subjected to arrest without probable cause--was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity if they can show that it was objectively reasonable for them to believe their acts did not violate that right.  Zellner, 494 F.3d at 367 (citations omitted).

The qualified immunity test is an objective one. "[I]f officers of reasonable competence could disagree" as to whether probable cause existed, "immunity should be recognized." Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Referring to this standard as "arguable" probable cause, the Second Circuit has stated that arguable probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could

have reasonably believed that probable cause existed in the light of well-established law." Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997).  However, "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" probable cause existed, "[d]efendants will not be immune."  Zellner, 494 F.3d at 367.

### ANALYSIS

### I. Officers Are Entitled to Qualified Immunity on Tahani's First Claim for False Arrest at the Magnetometer

Tahani claims that she was falsely arrested at the security checkpoint by officers Coleman and Ferrari. Under New York law, the elements of a false arrest claim are (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. Savino, 331 F.3d at 75.  Applying these criteria, there is no dispute that the first three elements of the claim are met. The defendants handcuffed and arrested Tahani with the intent to confine her; Tahani was conscious of the fact of her arrest; and Tahani protested, and did not consent to the arrest.

As for the fourth element, the Second Circuit has not addressed whether a § 1983 plaintiff has the burden of proving the absence of probable cause or whether the defendant has the burden of proving its existence. See Warheit, 271 Fed. Appx. at 125. However, it is unnecessary to decide that issue here

16

because the preponderance of the credible evidence shows that a reasonable police officer possessing the same knowledge as Coleman and Ferrari could have reasonably believed that probable cause existed to arrest Tahani at the security checkpoint. Therefore, the officers are entitled to qualified immunity for Tahani's first arrest.

The credible evidence indicates that Tahani's refusal to voucher her phone at the security checkpoint caused a commotion. In addition, her refusal to comply with the officers' instructions prevented people from passing through the checkpoint.  Pedestrian traffic into the building was halted because there was only one magnetometer in operation and both officers on duty were diverted to deal with Tahani.

Under these circumstances, Coleman and Ferrari could have reasonably believed that probable cause existed to arrest Tahani for disorderly conduct, either on the basis of unreasonable noise under New York Penal Law § 240.20(2) or the alternative ground of obstructing pedestrian traffic under New York Penal Law § 240.20(5). Coleman issued Tahani a summons for disorderly conduct on the basis of making unreasonable noise under New York Penal Law § 240.20(2).  Although Tahani was not charged with obstructing pedestrian traffic, an arrest is not unlawful if the officer has probable cause to believe that the person arrested has committed any crime, regardless of whether probable cause

17

supported any charge identified specifically by the arresting officer at the time of arrest.  *Jaegly*, 439 F.3d at 154. Therefore, because it was reasonable for Coleman and Ferrari to believe that probable cause existed to arrest plaintiff, the officers are entitled to qualified immunity.  *Sandberg*, 136 F.3d at 102.

**II. Coleman is Entitled to Qualified Immunity on Tahani's Second Claim for False Arrest at the Elevators**

Tahani claims that she was falsely arrested and imprisoned a second time when she was being escorted out of the courthouse building.  Tahani's second claim for false arrest fails because Coleman is entitled to qualified immunity.

The credible evidence shows that after getting out of the elevator, Tahani refused to leave the building and loudly demanded her belongings.  Because she raised her voice and refused to leave, a crowd began forming in front of the elevators.  Coleman and Spatola did not ask Tahani to step out of the way of pedestrian traffic to discuss the matter nor did they offer to find out what happened to Tahani's belongings. However, they were confronted with her shouting in the middle of a busy lobby.  Based on these circumstances, a reasonable police officer could have reasonably believed that Tahani was committing a crime by causing a commotion and blocking pedestrian traffic in a government building.  Therefore, based

on Tahani's outburst in front of the elevators, Coleman had at
least arguable probable cause to arrest Tahani for disorderly
conduct either on the basis of unreasonable noise under New York
Penal Law § 240.20(2) or the alternative ground of obstructing
pedestrian traffic under New York Penal Law § 240.20(5).
Although Tahani was not charged with violating these sections,
an arrest is not unlawful if the officer has probable cause to
believe that the person arrested has committed any crime,
regardless of whether probable cause supported any charge
identified specifically by the arresting officer at the time of
arrest.  Jaegly, 439 F.3d at 154.

### III. Plaintiff Has Failed to Prove Malicious Prosecution

Tahani claims that Officer Coleman maliciously prosecuted
her based on the charges brought against her after her second
arrest.  Tahani appeared in court twice to defend herself in
connection with the charges, which were eventually dismissed.

Under New York law, "the elements of an action for
malicious prosecution are (1) the initiation of a proceeding,
(2) its termination favorably to plaintiff, (3) lack of probable
cause, and (4) malice." Colon, 60 N.Y.2d at 82. It is undisputed
that dismissal is a termination favorable to plaintiff and that
she meets the second element of her claim.

Defendant Coleman argues that she did not "initiate" the
proceedings against Tahani because she simply told the District

Attorney what happened and he was the one who actually decided to proceed with the prosecution.  The District Attorney drafted the complaint and Coleman signed it.  Coleman also argues that she had probable cause to believe Tahani was guilty of the charges against her.  Finally, Coleman argues that she lacked malice.

While it is true that the District Attorney drafted the complaint, he simply transcribed the charges against Tahani from Coleman's unusual occurrence report.  The allegations of the complaint were based entirely on Coleman's description of the events and were drafted while she was present.  Therefore, the prosecutor's actions cannot be said to have been an intervening and independent judgment sufficient to break the chain of events between Coleman's actions and Tahani's prosecution.

However, Tahani's malicious prosecution claim fails because she has not shown that Coleman lacked probable cause for initiating the prosecution against her.  It was Tahani's burden to prove lack of probable cause. Pinsky, 79 F.3d at 312. In addition, Coleman is entitled to qualified immunity because she has shown by a preponderance of the credible evidence that she had knowledge sufficient to warrant a reasonable person to believe that probable cause existed for charging Tahani with disorderly conduct.  The credible evidence shows that Coleman witnessed Tahani's outburst in front of the elevators.  Coleman

and Spatola directed Tahani to leave the buildings several times, but Tahani refused to move and continued to scream.  This caused an obstruction of the entryway leading into and out of the building.  Based on her observation of these events, Coleman had knowledge of "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe [Tahani was] guilty" of the charges brought against her. Thus, Coleman is entitled to qualified immunity.  Colon, 60 N.Y.2d at 82.  Moreover, Tahani did not proffer any evidence that Coleman had an improper motive for prosecuting her, the fourth element of malicious prosecution.

## CONCLUSION

The foregoing shall constitute my findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). For the reasons set forth above, plaintiff has failed to prove her claims of false arrest, false imprisonment and malicious prosecution by a preponderance of the credible evidence.  In addition, defendants have proven their affirmative defense of qualified immunity by a preponderance of the credible evidence. Accordingly, the Clerk of the Court is directed to enter judgment dismissing the action.

SO ORDERED.


Date:      New York, New York
           September 23, 2009


                                    S/_____
                                       MIRIAM GOLDMAN CEDARBAUM
                                       United States District Judge